

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF ILLINOIS, STATE OF ILLINOIS DEPARTMENT OF TRANSPORTATION, and CITY OF CHICAGO *ex rel.* | ) ) ) ) ) | |
| ANGELO MILAZZO, | ) ) | Filed Under Seal and In Camera |
| Plaintiff-Relator, | ) ) | |
| v. | ) ) | Jury Trial Demanded |
| JOEL KENNEDY CONSTRUCTING CORPORATION, MARTINEZ UNDERGROUND, INC., BARRERA CONSTRUCTION, INC., JLA & SONS CONSTRUCTION COMPANY, E. KING CONSTRUCTION CO., INC., ORIENT EXPRESS SERVICE COMPANY, INC., MIDWEST REM ENTERPRISES, INC., CHICAGOLAND TRUCKIN INC., and MENINI CARTAGE, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Judge Ruben Castillo<br><br>Case No. 17-cv-3062 |
| Defendants. | | |

**FILED**

JUN 2 3 2017
Jun 23 2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## (CORRECTED) COMPLAINT

NOW COMES the UNITED STATES OF AMERICA, STATE OF ILLINOIS, STATE

OF ILLINOIS DEPARTMENT OF TRANSPORTATION, and the CITY OF CHICAGO, *ex rel.*

ANGELO MILAZZO, by and through their undersigned attorneys, Loevy & Loevy, and

complaining of Defendants JOEL KENNEDY CONSTRUCTING CORP., MARTINEZ

UNDERGROUND, INC., BARRERA CONSTRUCTION, INC., JLA & SONS

CONSTRUCTION COMPANY, E. KING CONSTRUCTION CO., INC., ORIENT EXPRESS

SERVICE COMPANY, INC., MIDWEST REM ENTERPRISES, INC., CHICAGOLAND

TRUCKIN INC., and MENINI CARTAGE, INC., states as follows:

### Background

1.      This action seeks damages and civil penalties arising from violations of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, the Illinois False Claims Act, 740 ILCS 175/1, *et seq.*, and the Chicago False Claims Ordinance, MCC § 1-22-010, *et seq.*

2.      Defendants engaged in multiple frauds related to six contracts with the City of Chicago (three related to water projects and three related to sewer projects) and one contract with the Illinois Department of Transportation.

3.      In order to procure hundreds of millions of dollars' worth of contracts with the City of Chicago, JKCC violated the requirement that 50% of all labor on the contracts be performed by Chicago residents by falsely certifying to the City that JKCC was using the requisite amount of City residents when, in fact, the majority of the employees were not Chicago residents.

4.      JKCC also engaged in numerous schemes utilizing Minority Business Enterprises ("MBEs"), companies that are owned and run by individuals of minority backgrounds, and Women Business Enterprises ("WBEs"), companies that are owned and run by women, to secure contracts with Chicago, and fraudulently utilized Disadvantaged Business Enterprises ("DBEs"), companies owned by a member of an economically or socially disadvantaged group, to secure contracts with the Illinois Department of Transportation. Namely, JKCC claimed to allocate a certain amount of contract dollars to the MBEs, WBEs, and DBEs when in reality the MBEs, WBEs, and DBEs functioned merely as "pass through" companies to mask the fact that the work was being performed by JKCC and the monies paid by the city on the contract were being funneled to JKCC.

2

5.     Additionally, JKCC engaged in scams involving billing the city for trucking services performed by companies that were not certified to do such work, which allowed JKCC to illegitimately inflate the value of its contracts while also fraudulently expanding the amount of the contract that could be claimed for MBE, WBE, and DBE credit, and using a cheaper backfill material instead of the proper, more expensive material that was specified and required by the contracts.

## Parties

6.     Relator Angelo Milazzo worked for JKCC starting in 1987 and served in various positions, including corporate secretary, until 2011. Relator Milazzo was a 10% shareholder in JKCC until 2011. On city projects, he served as the liaison officer for compliance with MBE, WBE, and DBE contract requirements. Relator has direct and independent knowledge of the frauds committed by the Defendants. By virtue of his position with JKCC, Relator was intimately aware of the schemes and frauds engaged in by JKCC. Relator left JKCC in October 2015.

7.     Defendant JKCC is a privately held company located at 40 Noll Drive in Waukegan, Illinois. It was established in 1982 and is incorporated under the laws of the state of Illinois. Joel Kennedy of Libertyville, Illinois is the President of JKCC.

8.     Defendant Martinez Underground, Inc. ("Martinez Underground") is a privately held company located at 12 Galleon Court in Third Lake, Illinois. It was established in 2000 and is incorporated under the laws of the State of Illinois. Adolfo C. Martinez of Grayslake, Illinois is the President of Martinez Underground.

3

9.      Defendant Barrera Construction, Inc. ("Barrera Construction") is a privately held company located at 238 Red Oak Court in West Chicago, Illinois. It was established in 1983 and is incorporated under the laws of the State of Illinois. Jose L. Barrera of West Chicago, Illinois is the President of Barrera Construction.

10.     Defendant JLA & Sons Construction Company ("JLA & Sons") is a privately held company located at 36760 North Boulevard View Avenue in Waukegan, Illinois. It was established in 2005 and is incorporated under the laws of the State of Illinois. Jose L. Arreola of Waukegan, Illinois is the President of JLA & Sons.

11.     Defendant E. King Construction Co., Inc. ("E. King") is a privately held company located in Chicago, Illinois. It was established in 1999 and is incorporated under the laws of the State of Illinois. Elaine King, a resident of Chicago, Illinois, is the President of E. King.

12.     Defendant Orient Express Service Company, Inc. ("Orient Express") is a privately held company located in Wauconda, Illinois. It was established in 1986 and is incorporated under the laws of the State of Illinois. Takyung Lee, a resident of Wauconda, Illinois, is the President of Orient Express.

13.     Defendant Midwest REM Enterprises, Inc. ("Midwest REM") is a privately held company located in Melrose Park, Illinois. It was established in 1992 and is incorporated under the laws of the State of Illinois. Albert Ramirez, a resident of Winfield, Illinois, is the President of Midwest REM.

14.     Defendant Chicagoland Truckin Inc. ("Chicagoland Truckin") is a privately held company located in Chicago, Illinois. It was established in 2002 and is incorporated under the laws

4

of the state of Illinois. Alberto Roman, a resident of Oak Park, Illinois, is the President of Chicagoland Truckin.

15.    Defendant Menini Cartage, Inc. ("Menini Cartage") is a privately held company located in Schaumburg, Illinois. It was established in 1966 and is incorporated under the laws of the State of Illinois. Linda Menini, a resident of Mount Prospect, Illinois, is the President of Menini Cartage.

## Jurisdiction and Venue

16.    The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1367 and 31 U.S.C. § 3730. The state and municipal law claims are transactionally related to the federal claims Relator brings on behalf of the government. The allegations and transactions upon which this action is based have not been publicly disclosed. Relator also has direct and independent knowledge of the information on which the allegations are based and voluntarily provided this information to the government before filing these claims.

17.    Venue is proper pursuant to 31 U.S.C. § 3732. All Defendants transact business in this judicial district and the claims are based on events that occurred in this judicial district. Moreover, most if not all of the Defendants reside and/or maintain their principal place of business here.

## Overview of Contracts

18.    There are at least six contracts with the City of Chicago at issue in this lawsuit:

a.    JKCC Project/Job No. 1141, Contract (PO) Number 19367, Specification Number 68904 is a contract between JKCC and the City of Chicago Department of Water Management entitled "Private Drain Repair – North Area/DWM Project 6220A," with

a contract term starting March 3, 2009, and ending March 3, 2011, with a one year extension. (Exhibit 1). The dollar amount of the contract is $6,261,900, and the final amount paid on the contract was approximately $8,020,879. JKCC certified in the contract that 24% of the total work on the contract would be performed by MBEs and that 4% of the total work on the contract would be performed by WBEs. (Ex. 1 at p. 69). As detailed below, JKCC was well aware that these certifications were false and that it did not comply and had no intent of complying with these and other requirements under the contract.

b.  JKCC Project/Job No. 1154, Contract (PO) Number 26407, Specification Number 104069 is a contract between JKCC and the City of Chicago Department of Water Management entitled "North District Water Construction," with a contract term starting May 10, 2012, and ending February 3, 2013. (Exhibit 2). The dollar amount of the contract is $46,446,350, and the final amount paid on the contract was approximately $26,722,406. With regard to MBE and WBE participation, JKCC certified in the contract that 24% of the total work on the contract would be performed by MBEs and that 4% would be performed by WBEs. (Ex. 2 at p. 77). As detailed below, JKCC was well aware that these certifications were false and that it did not comply and had no intent of complying with these and other requirements under the contract.

c.  JKCC Project/Job No. 1157, Contract (PO) Number 27739, Specification Number 112101 is a contract between JKCC and the City of Chicago Department of Water Management entitled "Water Main Construction – District One," with a contract term

starting January 28, 2013, and ending January 27, 2016. (Exhibit 3). The dollar amount of the contract is $86,875,550. (Exhibit 3), and the final amount paid on the contract was approximately $102,199,408. With regard to MBE and WBE participation, JKCC again certified in the contract that 24% of the total work on the contract would be performed by MBEs and that 4% of the total work on the contract would be performed by WBEs. (Ex. 3 at p. 71). As detailed below, JKCC was well aware that these certifications were false and that it did not comply and had no intent of complying with these and other requirements under the contract.

d.  JKCC Project/Job No. 1158, Contract (PO) Number 27738, Specification Number 112102 is a contract between JKCC and the City of Chicago Department of Water Management entitled "Water Main Construction – District Two," with a contract term starting January 28, 2013, and ending January 27, 2016. (Exhibit 4). The dollar amount of the contract is $85,140,550. (Exhibit 4), and the final amount paid on the contract was approximately $98,348,051. With regard to MBE and WBE participation, JKCC once again certified in the contract that 24% of the total work on the contract would be performed by MBEs and that 4% of the total work on the contract would be performed by WBEs. (Ex. 4 at p. 71). As detailed below, JKCC was well aware that these certifications were false and that it did not comply and had no intent of complying with these and other requirements under the contract.

e.  JKCC Project/Job No. 1159, Contract (PO) Number 28325, Specification Number 115457 is a contract between JKCC and the City of Chicago Department of Water Management entitled "Damen Avenue Sewer Improvement – N. Damen Ave & W.

7

Albion Ave.," with an award date of July 24, 2013 (the contract states that "Term of Contract is not applicable"). (Exhibit 5). The dollar amount of the contract is $4,102,981, and the final amount paid on the contract was approximately $4,068,531. With regard to MBE and WBE participation, JKCC certified in the contract that 24% of the total work on the contract would be performed by MBEs and that 4% of the total work on the contract would be performed by WBEs. (Ex. 5 at p. 70). As detailed below, JKCC was well aware that these certifications were false and that it did not comply and had no intent of complying with these and other requirements under the contract.

f. Contract (PO) Number 43252, Specification Number 127995 is a contract between JKCC and the City of Chicago Department of Water Management entitled "Augusta Boulevard Sewer Improvement" with an award date of October 19, 2016 (the contract states that "Term of Contract is not applicable"). The dollar amount of the contract is $2,138,780. (Exhibit 6). With regard to MBE and WBE participation, JKCC certified in the contract that approximately 24.04% of the total work on the contract would be performed by MBEs and that approximately 4.02% of the total work on the contract would be performed by WBEs. (Ex. 6 at p. 76). Upon information and belief, JKCC was well aware that these certifications were false and that it did not comply and had no intent of complying with these and other requirements under the contract.

19. There is at least one contract with the Illinois Department of Transportation ("IDOT") at issue in this lawsuit. JKCC Project/Job No. 1152, Contract Number 60F90, Job C-91-287-09, entitled "Storm Sewer Installation at I-190/I-294 (Tri-State Tollway) From the Canadian National Railroad to the Des Plaines River in Chicago and Rosemont" (Exhibit 7).

8

JKCC's DBE Utilization plan for the contract was approved on December 16, 2011, shortly before the contract was awarded. This contract has a term of March 2012 until October 2013. The contract was scheduled for "Final Inspection" to take place on October 25, 2013. The "Contractors Payment Information" for the contract indicates that final payment on the contract was made on April 28, 2014. The original contract awarded amount was $9,397,519, with a final adjusted value of $9,716,806.23. In obtaining approval of the DBE Utilization Plan and securing the contract, JKCC certified that it would have 23% DBE participation rate on the contract. As detailed below, JKCC made that certification to attain this contract knowing it was false and that JKCC had no intent of complying with the DBE plan and other requirements under the contract. Nor did JKCC comply.

### JKCC's Residency Requirement Fraud

20.     All of JKCC's contracts with the City of Chicago mandate that 50% of all labor pursuant to the contract be performed by Chicago residents. However, the vast majority of the employees who worked on the contracts at issue were not Chicago residents.

21.     JKCC avoided this residency requirement in two ways: 1) by having employees use fake addresses; and 2) by omitting non-Chicago resident employees from paperwork it submitted to Chicago.

22.     JKCC instructed its employees to acquire fake Chicago addresses that could be included on paperwork submitted to the City. Joel Kennedy, the President of JKCC, and the workers who lived in or around Waukegan, Illinois, would typically gather every weekday morning around 5:30 am at JKCC's office in Waukegan to prepare for the day's work and gather materials before riding in company vehicles from Waukegan to the relevant job site in Chicago.

9

23. JKCC's actual payroll for a given contract can be compared to the certified payroll that was submitted to the City, which has fewer employees as it removes many of the employees listed on the actual payroll who had not obtained fraudulent Chicago addresses.

24. The payroll records for Job 1157 for the week ending 7/5/15 provide a snapshot of how the payroll used to perpetrate the residency fraud is assembled and submitted. Ms. Robin Jasper is the JKCC employee and Board Member who would typically gather the payroll each week and tender it to the payroll company, "Paychex." Each worker's time is coded to a specific job number, in this case either 1157 or 1158. Ms. Leonor Bond was tasked with creating an in-house certified payroll in which she input the data and saved it to the JKCC hard drive. At this phase, the actual time submitted for payroll does not match the certified payroll to be submitted to the City. JKCC Project Engineer Michael Patti, who was responsible for keeping track of the residency requirement, directed Ms. Bond to omit certain employees who were not Chicago residents, in order to increase the percentage of Chicago residents on the payroll. Mr. Patti then took the in-house certified payroll from Ms. Bond and reported this to the City.

25. Additionally, the company used non-resident employees who had not obtained phony Chicago addresses. JKCC perpetrated this fraud by submitting certified payrolls to the City that purposefully omitted those workers lacking sham Chicago addresses who otherwise were included on JKCC's actual payroll. The City requires that payrolls be "collected along with other information and either submitted to the City or, for newer contracts, input into LCPTracker." Failure to follow these requirements subjects the offender to penalties, including that:

> "[I]n such a case of non-compliance, 1/20 of 1 percent (.05%), 0.0005, of the approved contract value for this contract shall be surrendered by the contractor to the city in payment for each percentage of shortfall toward the stipulated residency requirement.

10

Failure to report the residency of employees entirely and correctly shall result in the surrender of the entire liquidated damages as if no eligible residents were employed in either of the categories. The willful falsification of statements and the certification of payroll date may subject the contractor or subcontractors or employee to prosecution." *Id.* at p. 9.

26.      Certified payrolls that JKCC submitted IDOT in conjunction with the IDOT project 60F90 reveal the actual addresses of a number of employees who used fake Chicago addresses on certified payrolls submitted for the Chicago contracts (all subcontractor payrolls were submitted to JKCC, and, in turn, JKCC submitted payrolls to IDOT).

27.      Examples of this fraud include:

- Payroll Nos. 2 and 5 that were submitted to IDOT show the real address for JKCC employee Jose Lopez (in Bourbonnais, Illinois), while Payroll No. 42 indicates a sham address used for Chicago projects. These IDOT payrolls also reveal the actual addresses of JKCC employees Avery Jackson, Hugo Lozano, and Jorge Ayala, which of course do not match the phony Chicago addresses submitted for the Chicago contracts.

- Joel Kennedy's sisters, Sherry Kennedy (a union laborer) and Kristie Kennedy (a union operator), appeared on certified payroll documents with fake Chicago addresses even though Joel Kennedy and Ms. Robin Jasper (the JKCC employee and board member mentioned further below who was responsible for submitting payroll to the payroll company, "Paychex") knew the sisters personally and knew that they did not reside in Chicago. Certified payroll documents mistakenly listed Sherry Kennedy's true address in Harvard, Illinois, but subsequent payrolls for JKCC Project Numbers 1157 and 1158 were altered so that they listed Sherry Kennedy as residing at a phony Chicago address. Direct deposit documentation also confirms that Sherry Kennedy's true address was in Harvard,

11

Illinois. Kristie Kennedy's true address is in Salem, Wisconsin, but she is listed as residing at a fake Chicago address.

- JKCC's payroll shows that two non-resident employees were claiming to live at the Chicago residence of JKCC Board Member, VP, and General Counsel, Paul Lubanski.

- Payroll records dated from April 2012 to November 2012 for the "Lake County Public Works Heron's Landing" project performed by JKCC, which is unrelated to the contracts at issue in this case, indicate the actual addresses for many of the same non-resident JKCC employees who were claiming to be Chicago residents for purposes of the contracts with the City.

- JKCC claimed that Encente "Joe" Lozano and his son Hugo were Chicago residents, even though both lived in Waukegan. Indeed, Joe Lozano was a personal friend of Joel Kennedy and worked for JKCC from 1990 until 2015, and Kennedy knew the Lozanos were not Chicago residents.

### JKCC's MBE, WBE, and DBE Fraud

28.     For its IDOT and City of Chicago contracts, JKCC improperly utilized companies that had been certified as MBEs, WBEs, and DBEs to serve as "pass through" companies (hereinafter, "pass throughs") for work that was not ultimately performed by these MBEs, WBEs, and DBEs. For their involvement in this scam, JKCC would pay the pass throughs a three percent markup of charges the pass throughs incurred, such as paying Martinez Underground a three percent markup for concrete purchases for JKCC Project Number 1141 while claiming credit for Martinez performing concrete-related work that it did not in fact perform.

29.     As stated above, JKCC certified in its contracts with Chicago that there would be 24% MBE participation and 4% WBE participation in all of its contracts when these MBEs and WBEs did not in fact perform that amount of work under the contracts. The MBEs and WBEs that were to perform work under JKCC's contracts with Chicago had been certified as MBEs and/or WBEs under Chicago's Department of Procurement Services Certification and Compliance Division. MBEs have at least 51 percent ownership by a minority or have 51% of their business controlled by one or more minority groups, while WBEs have at least 51% ownership by a woman or have 51% of their business controlled by one or more women.

30.     In the Chicago contracts at issue in this lawsuit, JKCC and the MBEs and WBEs claimed that $67,619,456 would be allocated to work performed by MBEs and WBEs. Thus, approximately $70 million should have gone to legitimate MBE and WBE companies in the Chicago area, but Defendants thwarted this, resulting in not only a major loss of business to the legitimate MBE and WBE community but also a significant blow to the ability of these companies to develop and thrive, which is the primary intent of all MBE and WBE programs.

31.     As stated above, JKCC also certified in its contract with IDOT that there would be 23% DBE participation when these DBEs did not in fact perform that amount of work under the contracts. The MBEs and WBEs that were to perform work under JKCC's contracts with IDOT had been certified as DBEs under IDOT pursuant to eligibility standards of the U.S. Department of Transportation under 49 CFR Part 26 and 23 and the processes established by the Illinois Unified Certification Program. DBEs have at least 51 percent ownership by a socially or economically disadvantaged individual or individuals.

32.     In the IDOT contract at issue in this lawsuit, JKCC and the DBEs claimed that $2,182,481.84 of those contracts would be allocated to DBEs for work performed under the

13

contracts. Thus, over $2 million should have gone to legitimate DBE companies in the Chicago area, but Defendants thwarted this, resulting in not only a major loss of business to the legitimate DBE community but also a significant blow to the ability of these companies to develop and thrive, which is the primary intent of all DBE programs.

33.     The IDOT contract was funded at least in part by the U.S. Department of Transportation. Accordingly, each contract was subject to the DOT rules set out in 49 CFR § 26 regarding DBE usage. These rules were incorporated into JKCC's bids and the final contracts it received.

34.     Several MBEs, WBEs, and DBEs, including Martinez Underground, Barrera Construction, and numerous trucking companies such as Defendants E. King, Orient Express, and Midwest REM, Chicagoland Truckin, and Menini Cartage participated in this fraud.

35.     For instance, rather than performing work on a price per unit basis, as indicated in JKCC's bids submitted to Chicago and IDOT for Martinez Underground and Barrera Construction, Martinez Underground and Barrera Construction actually completed work on a Time and Materials basis and invoiced 100% of the concrete charges, and concrete and water main charges in the case of Martinez Underground, to JKCC while collecting a three percent service charge. For the IDOT contract, Martinez Underground charged a substantial amount, as reflected in invoices submitted to JKCC by subcontractors and suppliers but actually paid for by Martinez Underground.

36.     Martinez Underground and Barrera Construction were involved in various schemes, to give the false impression that these MBEs were performing the amount of labor required under the contracts. One of these schemes entailed JKCC placing orders for materials through the MBEs, WBEs, and DBEs for work that was actually being done by JKCC rather than

14

the MBEs, WBEs, and DBEs. For instance, the MBEs, WBEs, and DBEs would pay for concrete that was used by JKCC. By operating this way, JKCC could evade the MBE/WBE/DBE work requirements by claiming that the MBEs, WBEs, and DBEs performed a substantial amount of work that they did not in fact perform.

37.    JLA & Sons also functioned as a pass through, to mask the fact that JKCC was doing work which should have been performed by MBEs per the contractual requirements and certifications, as JLA & Sons was billed for approximately $1 million in materials that were then used by JKCC. Indeed, $1,559,272.40 was submitted as JLA and Sons' total dollar amount for purposes of MBE credit on the JKCC Project Number 1154, even though JLA & Sons only spent $677,266.00 on this contract. In a letter dated January 13, 2014, JKCC employee Paul DeLassus writes to JLA & Sons President Jose Arreola to inform him that overages on JKCC Project No. 1154 that were fraudulently charged through JLA & Sons would carry over to subsequent projects.

38.    Demonstrating that JKCC was actually performing work that should have been performed by the MBEs, WBEs, and DBEs under the contracts, JKCC would often negotiate directly with suppliers but then direct the MBEs, WBEs, and DBEs to pay the bills for materials that were delivered to JKCC rather than the MBEs, WBEs, and DBEs.

39.    JKCC used its own employees and fraudulently claimed that they worked for the MBEs, WBEs, and DBEs, by shifting around employees so that JKCC employees would appear on the payroll for the MBEs, WBEs, and DBEs. This was done so that JKCC could continue controlling and directing work that the DBEs would have been unqualified to perform while allowing JKCC to claim MBE, WBE, and DBE credit for the labor on those projects. The majority of the purported MBE/WBE/DBE employees are moved back to JKCC's payroll once the project (in this case, the IDOT project) is completed. Additionally, an in-house ledger spreadsheet

15

prepared by Robin Jasper for the IDOT project shows that there are only three legitimate Martinez Underground employees, while the rest were JKCC employees put on Martinez Underground's payroll, and another in-house ledger spreadsheet prepared by Ms. Jasper for the IDOT project demonstrates how JKCC allowed Martinez Underground to mark up its own employees 15% while only marking up JKCC employees (who are now on Martinez Underground's payroll) by 5%.

40.     Former JKCC superintendent Bernie Prisby, who was in charge of the IDOT project, maintained a daily diary in which he kept track of which payroll certain JKCC employees should be placed on by writing "J" for "JKCC" or "M" for "Martinez Underground" next to an employee's name to indicate the payroll on which that employee should be included. Because the personnel assignments changed on a daily basis, Mr. Prisby stopped attempting to keep track of these assignments and would simply communicate the workers' time to Robin Jasper via telephone. Ms. Jasper would then segregate the Martinez Underground payroll and then fax it over to the Martinez Underground office so that Martinez Underground would write checks for the proper amounts and maintain records of certified payroll to submit to IDOT to perpetrate the fraud. Ms. Jasper engaged in the equivalent procedure by emailing timesheets to Miriam Baker, daughter of President Jose L. Barrera, as Ms. Baker runs the day-to-day business for Barrera Construction. These examples illustrate that Martinez Underground and Barrera Construction supplied minimal workers on these projects and were used as pass through companies for materials.

### Unauthorized Work Performed By Trucking Companies

41.     An additional fraud entailed MBEs, WBEs, and DBEs that were only certified to perform hauling engaging in other work that they were not authorized to do.

42.     Trucking company Defendants E. King, Orient Express, Midwest REM, Chicagoland Truckin, and Menini Cartage were certified to perform limited tasks, and they were not authorized suppliers or distributors. Working with these MBEs, WBEs, and DBEs, JKCC charged fees for dumping and materials relating to services the MBEs, WBEs, and DBEs were not allowed to perform, to expand the percentage of the contract for which JKCC could claim credit for MBE, WBE, and DBE subcontractor labor and increasing the price of the overall contracts on which the MBE, WBE, and DBE credits were claimed. By engaging in this behavior, Defendants flouted the requirements set forth in the December 3, 2012, "Clarification No. 1" for Water Main Construction Bids as Paragraphs 32 and 33 of the Clarification state,

> 32. If the prime contractor is trying to get MBE/WBE credit for any type of materials that are being provided to the job site, the MBE/WBE firm must be certified as a supplier of [sic] distributor of goods. A prime contractor will only receive MBE/WBE credit for work that is actually performed by the MBE or WBE firm with its' [sic] own forces and materials. To the extent that an MBE/WBE firm, choses [sic] to subcontract performance of the work to a non-certified vendor, credit will not be granted for the work performed by the non-certified firm…

> 33. Prime contractors that use MBE/WBE firms that are certified as suppliers or distributors will receive 60 credits toward the contract goal. If a trucking firm is certified as a supplier or distributor as well as a trucking company (hauling) and the MBE/WBE firm is using its own trucks to deliver the materials, 100% credit will be granted towards the contract goal.

43.     One of the tasks that JKCC would bill through the Defendant trucking companies was purchasing backfill material even though these trucking companies were not authorized to purchase this backfill material.

### Backfill Material Fraud

44.     JKCC knowingly used a cheaper backfill material when the contracts specified a more expensive backfill material.

17

45.     The contracts required that a washed CA-16 backfill material, which has a higher price due to greater hauling costs, be used. In order to avoid these costs, JKCC used an unwashed CA-16 material but attempted to pass it off as a washed material unbeknownst to the City and in blatant disregard for the contractual requirements.

46.     The specifications contained in Book 3 to the contracts for JKCC Project/Job No. 1154, Contract (PO) Number 26407, Specification Number 104069, JKCC Project/Job No. 1157, Contract (PO) Number 27739, Specification Number 112101, and JKCC Project/Job No. 1158, Contract (PO) Number 27738, Specification Number 112102 clearly state that washed CA-16 must be used, but JKCC still insisted on using the substantially cheaper unwashed CA-16:

> 2.3 BACKFILL MATERIAL
>
> A. Backfill Material for Water Main Construction 1. Coarse aggregate (CA) material classified as crushed gravel, crushed stone, crushed limestone, or mechanically crushed concrete conforming to IDOT gradation CA-16 unless authorized otherwise. Material must be washed, angular, have uniform properties, and noncorrosive.

### **Lack Of Knowledge Of Government Officials**

47.     No official of the United States Government, State of Illinois, Illinois Department of Transportation, or City of Chicago charged with responsibility to act on the frauds alleged herein knew or reasonably should have known of the frauds or the related false statements prior to the filing of this complaint.

### **Count I – False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B)**

48.     Relator incorporates each paragraph of this Complaint as if fully set forth herein.

49.     As described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States, false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

50.     As described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim for payment or approval by the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(B).

51.     As a result of these claims, the United States Government paid Defendants and suffered damages to be determined at trial.

### Count II – False Claims Act, 31 U.S.C. § 3729(a)(1)(C)

52.     Relator incorporates each paragraph of this Complaint as if fully set forth herein.

53.     Defendants conspired to defraud the United States Government by getting false or fraudulent claims allowed or paid, and/or conspired to commit a violation of 31 U.S.C. § 3729(a)(1)(A) or (B), in violation of 31 U.S.C. § 3729(a)(1)(C).

54.     As a result of their acts or omissions, Defendants caused the United States to sustain damages in an amount to be determined at trial.

### Count III – False Claims Act, 31 U.S.C. § 3729(a)(1)(G)

55.     Relator incorporates each paragraph of this Complaint as if fully set forth herein.

56.     Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(G).

57.     As a result of their acts or omissions, Defendants caused the United States to sustain damages in an amount to be determined at trial.

### Count IV – Illinois False Claims Act, 740 ILCS 175/3(a)(1)(A) and (a)(1)(B)

58.     Relator incorporates each paragraph of this Complaint as if fully set forth herein.

19

59.     As described above, Defendants knowingly presented, or caused to be presented, to an official or employee of the State of Illinois, false or fraudulent claims for payment or approval, in violation of 740 ILCS 175/3(a)(1)(A).

60.     As described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim for payment or approval by the State of Illinois, in violation of 740 ILCS 175/3(a)(1)(B).

61.     As a result of these claims, the State of Illinois paid Defendants and suffered damages to be determined at trial.

### Count V – Illinois False Claims Act, 740 ILCS 175/3(a)(1)(C)

62.     Relator incorporates each paragraph of this Complaint as if fully set forth herein.

63.     Defendants conspired to defraud the State of Illinois by getting false or fraudulent claims allowed or paid, and/or conspired to commit a violation of 740 ILCS 175/3(a)(1)(A) or (B), in violation of 740 ILCS 175/3(a)(1)(C).

64.     As a result of their acts or omissions, Defendants caused the State of Illinois to sustain damages in an amount to be determined at trial.

### Count VI – Illinois False Claims Act, 740 ILCS 175/3(a)(1)(G)

65.     Relator incorporates each paragraph of this Complaint as if fully set forth herein.

66.     Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State of Illinois, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the State of Illinois, in violation of 740 ILCS 175/3(a)(1)(G).

67.     As a result of their acts or omissions, Defendants caused the State of Illinois to sustain damages in an amount to be determined at trial.

**Count VII – Chicago False Claims Act, Municipal Code of Chicago Chapter 1-22-020(1) and 1-22-020(2)**

68.     Relator incorporates each paragraph of this Complaint as if fully set forth herein.

69.     As described above, Defendants knowingly presented, or caused to be presented, to an official or employee of the City of Chicago, false or fraudulent claims for payment or approval, in violation of Municipal Code of Chicago Chapter 1-22-020(1).

70.     As described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim for payment or approval by the City of Chicago, in violation of Municipal Code of Chicago Chapter 1-22-020(2).

71.     As a result of these claims, the City of Chicago paid Defendants and suffered damages to be determined at trial.

**Count VIII – Chicago False Claims Act, Municipal Code of Chicago Chapter 1-22-020(3)**

72.     Relator incorporates each paragraph of this Complaint as if fully set forth herein.

73.     Defendants conspired to defraud the City of Chicago by getting false or fraudulent claims allowed or paid, and/or conspired to commit a violation of Municipal Code of Chicago Chapter 1-22-020(1) or 1-22-020(2), in violation of Municipal Code of Chicago Chapter 1-22-020(3).

74.     As a result of their acts or omissions, Defendants caused the City of Chicago to sustain damages in an amount to be determined at trial.

**Count IX – Chicago False Claims Act, Municipal Code of Chicago Chapter 1-22-020(7)**

75.     Relator incorporates each paragraph of this Complaint as if fully set forth herein.

76.     Defendants knowingly made, used, or caused to be made or used, a false record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the City of Chicago, in violation of Municipal Code of Chicago Chapter 1-22-020(7).

77.     As a result of their acts or omissions, Defendants caused the City of Chicago to sustain damages in an amount to be determined at trial.

### Jury Trial Demanded

The United States of America, the State of Illinois, the State of Illinois Department of Transportation, and the City of Chicago, on the relation of Angelo Milazzo, hereby demands trial by jury on all issues so triable.

WHEREFORE, Relator Angelo Milazzo respectfully requests that the Court enter judgment in his favor and in favor of the United States of America, the State of Illinois, the State of Illinois Department of Transportation, and the City of Chicago against Defendants, awarding treble damages, penalties, and all appropriate relief for violations of the federal False Claims Act, the Illinois False Claims Act, and the Chicago False Claims Act, and awarding Relator Angelo Milazzo thirty percent of the government's recovery as well as costs and attorney fees.

Respectfully submitted,

Frank Newell
Mike Kanovitz
Scott Rauscher
Loevy & Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, IL 60607
Ph: (312) 243-5900
Frank@loevy.com
Mike@loevy.com
Scott@loevy.com
*Attorneys for Relator*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF ILLINOIS, STATE OF ILLINOIS DEPARTMENT OF TRANSPORTATION, and CITY OF CHICAGO *ex rel.* | ) ) ) ) ) | |
| ANGELO MILAZZO, | ) ) | Filed Under Seal and In Camera |
| Plaintiff-Relator, | ) ) ) | |
| v. | ) ) | Jury Trial Demanded |
| JOEL KENNEDY CONSTRUCTING CORPORATION, MARTINEZ UNDERGROUND, INC., BARRERA CONSTRUCTION, INC., JLA & SONS CONSTRUCTION COMPANY, E. KING CONSTRUCTION CO., INC., ORIENT EXPRESS SERVICE COMPANY, INC., MIDWEST REM ENTERPRISES, INC., CHICAGOLAND TRUCKIN INC., and MENINI CARTAGE, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Judge Ruben Castillo

Case No. 17-cv-3062 |
| Defendants. | | |

**FILED**

JUN 23 2017

Jun 23, 2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## <u>NOTICE OF FILING</u>

To:     See attached Service List.

**Please take notice** that I have this 23rd day of June 2017 caused to be filed under seal

and in camera Plaintiff's **CORRECTED COMPLAINT**, a copy of which is herewith served

upon you. This Corrected Complaint only adds Relator's Counsel's signature and e-mail address,

which were initially omitted inadvertently.

Dated June 23, 2017

Frank Newell

## CERTIFICATE OF SERVICE

I, Frank Newell, do hereby certify that a copy of Relator's **CORRECTED COMPLAINT** will be sent and served upon the counsel listed in the attached Service List by electronic mail on the 23rd day of June, 2017.

Dated June 23,

_____

Frank Newell

Frank Newell
Mike Kanovitz
Scott Rauscher
Loevy & Loevy
311 N. Aberdeen Street, 3rd Floor
Chicago, IL 60607
Ph: (312) 243-5900
Frank@loevy.com
Mike@loevy.com
Scott@loevy.com

## SERVICE LIST

Joel Levin
Linda Wawzenski
Kristen E. Rau
US Attorney's Office
Northern District of Illinois
219 S. Dearborn St.
Chicago, IL 60604
kristen.rau@usdoj.gov

Jeanne Witherspoon
John Wolfsmith
Aaron Chait
Office of the Attorney General
100 W. Randolph St., 13th Floor
Chicago, IL 60601
AChait@atg.state.il.us
JWolfsmith@atg.state.il.us

Edward Siskel
Diane Pezanoski
Fiona Burke
Michael Zumwalt
City of Chicago Law Department
121 North LaSalle Street, STE 600
Chicago, IL 60602
Fiona.Burke@cityofchicago.org
Michael.Zumwalt@cityofchicago.org
Diane.Pezanoski@cityofchicago.org